**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

Ramón P.A.[1],
Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,
Defendant.

Civil No. 25-1205 (GLS)

**OPINION AND ORDER**

Plaintiff seeks review of the Commissioner of the Social Security Administration's (the "SSA") denial of his application for Social Security Disability Insurance benefits ("SSDI"). Docket No. 1. Plaintiff sustains that the decision should be reversed because it was not supported by substantial evidence and was based on incorrect legal standards. Docket No. 14. The Commissioner opposed. Docket No. 16. Plaintiff replied. Docket No. 19. The parties consented to the entry of judgment by a United States Magistrate Judge under the provisions of 28 U.S.C. §636(c). Docket No. 3. After careful review of the administrative record and the parties' briefs, the Commissioner's decision denying disability benefits is **REVERSED in part and REMANDED for further proceedings consistent with this Opinion.**

## I. Procedural Background

On April 19, 2021, Plaintiff filed an application for children's SSDI claiming that, as of March 30, 2003, the following conditions limited his ability to work: history of motor vehicular accident in March 2003 resulting in multiple maxillofacial fractures, traumatic right leg ischemia s/p below knee amputation in March 2003, history of stump infection, cognitive changes due to traumatic brain injury (TBI), intracranial injury excluding skull fracture, right knee stump infection in November 2003, movement disorder (right hand tremors), mathematics disorder, attention deficit disorder without hyperactivity, and non-dependent abuse of drugs. Tr. 25, 29-30. Plaintiff

[1] Plaintiff's last name is omitted for privacy reasons.

received treatment from several doctors as evidenced by his disability report. The claim was denied initially on July 15, 2021, and upon reconsideration on December 27, 2021. Tr. 106, 111. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") and, on February 27, 2023, a hearing was held by telephone before ALJ Livia Morales. Tr. 80-105. Plaintiff testified and was represented by counsel. Id. Vocational Expert ("VE") Michael Becerra and Plaintiff's mother, Nora Josefa Albizu Rojas, testified at the hearing. Id. On September 13, 2023, a supplemental hearing was held by telephone. Tr. 49-79. Diego Bonilla, a medical expert, and VE Luisa Suess testified at the supplemental hearing. Id. On November 28, 2023, the ALJ issued a partially favorable decision finding that Plaintiff was disabled as defined in the Social Security Act from March 30, 2003, through March 30, 2005, but not thereafter. Tr. 25-43. The ALJ determined that medical improvement related to Plaintiff's ability to work occurred on March 31, 2005, and that Plaintiff had been capable of substantial gainful activity since that date. Tr. 31. Accordingly, the ALJ concluded that Plaintiff's disability ended on March 30, 2005. Id. Plaintiff asked the Appeals Council to review but the request was denied on February 27, 2025, rendering the Commissioner's decision the final decision for review by this Court. Tr. 1-3. On April 10, 2025, Plaintiff initiated this action and both parties filed memoranda in support of their respective positions. Docket Nos. 14, 16, 19.

## II. Legal Framework

### A. Disability Determination by the SSA: Five Step Process

Under the authority of the Social Security Act, the Social Security Administration has promulgated regulations providing for the payment of disabled child's insurance benefits to claimant who are 18 years of age or older and whose disability began before attaining age 22. 20 C.F.R. § 404.350(a)(5). To receive benefits under the Social Security Act, the ultimate question is whether plaintiff is disabled within the meaning of 42 U.S.C. § 423(d). Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. See id. The severity of the impairment must be such that the claimant "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial work which exists in the national economy." Id. §423(d)(2)(A). The burden of proving disability rests on plaintiff. Id. § 423(d)(5)(A); Bowen v. Yuckert, 482 U.S. 137, 146 (1987).

The Commissioner engages in a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; Bowen, 482 U.S. at 140-42. At step one, the ALJ determines whether the claimant is engaged in "substantial gainful activity" and, if so, the claimant is not disabled. 20 C.F.R. § 404.1520(b). If not engaged in substantial gainful activity, the Commissioner must determine whether the claimant has a medically severe impairment or combination of impairments that significantly limit his physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). The step two severity requirement imposes a *de minimis* burden, which is designed to screen out groundless claims. McDonald v. Sec'y of Health and Human Servs., 795 F.2d 1118, 1123 (1st Cir. 1986). If the impairment or combination of impairments is severe, the third step applies. The ALJ must determine whether the claimant's severe impairments meet the requirements of a "listed impairment," which the Commissioner acknowledges are so severe as to preclude substantial gainful activity. See 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, Subpart P, App. 1. If the claimant has a "listed impairment" or an impairment equivalent in severity to a "listed impairment," the claimant is considered disabled. If the claimant's impairment does not meet the severity of a "listed impairment," the ALJ must determine the claimant's Residual Function Capacity ("RFC"). Id. § 404.1520(e). An individual's RFC is his or her ability to do physical and mental work activities on a sustained basis despite limitations due to impairments. Id. § 404.1520(e); § 404.1545(a)(1). At step four, the ALJ must determine, taking into consideration the RFC, whether the claimant can perform past relevant work. Id. § 404.1520(f); § 416.920(f). If not, then the fifth and final step applies.

At steps one through four, the claimant has the burden of proving he cannot return to his former employment due to the alleged disability. Santiago v. Sec'y of Health and Human Servs., 944 F.2d 1, 5 (1st Cir. 1991). However, at step five, the Commissioner has the burden to prove the existence of other jobs in the national economy that claimant can perform. 20 C.F.R. § 404.1520(g); Ortiz v. Sec'y of Health and Human Servs., 890 F.2d 520, 524 (1st Cir. 1989). If there are none, the claimant is entitled to disability benefits. 20 C.F.R. § 404.1520(f).

If the Commissioner finds a claimant disabled at any step in the sequential evaluation, the Commissioner must also determine whether the disability is ongoing. Id. § 404.1594. To establish that the disability has ended, the Commissioner must show that there has been "medical improvement related to [the claimant's] ability to work" and that the claimant is capable of substantial gainful activity. Id. § 404.1594(a). "Medical improvement" is defined as "any decrease

in the medical severity of [the claimant's] impairment(s)" that existed at the time of the most recent favorable decision finding the claimant disabled. Id. § 404.1594(b)(1). The determination "must be based on improvement in the symptoms, signs and/or laboratory findings associated with [the claimant's] impairment(s)." Id. The Commissioner evaluates medical improvement under the eight-step sequential process set forth in 20 C.F.R. § 404.1594(f).

At step one, the Commissioner determines whether the claimant is engaging in substantial gainful activity. Id. § 404.1594(f)(1). At step two, the Commissioner considers whether the claimant has an impairment or combination of impairments that meets or medically equals a listed impairment. Id. § 404.1594(f)(2). At step three, the Commissioner determines whether medical improvement has occurred. Id. § 404.1594(f)(3). At step four, if medical improvement has occurred, the Commissioner determines whether it is related to the claimant's ability to work. Id. § 404.1594(f)(4). At step five, if the medical improvement is not related to the claimant's ability to work, the Commissioner determines whether an exception to the medical-improvement standard applies. Id. § 404.1594(f)(5). At step six, if medical improvement is related to the claimant's ability to work, the Commissioner determines whether the claimant's impairments remain severe. Id. § 404.1594(f)(6). At step seven, the Commissioner must determine the claimant's RFC and determine whether the claimant can perform past relevant work. Id. § 404.1594(f)(7). Finally, at step eight, if the claimant cannot perform past relevant work, the Commissioner determines whether the claimant can perform other work considering the claimant's residual functional capacity, age, education, and work experience. Id. § 404.1594(f)(8).

Although the Commissioner bears the burden of producing substantial evidence of medical improvement (id. § 404.1594), a claimant is not entitled to a presumption that disability continues. Instead, the determination must be "made on a neutral basis without any initial inference as to the presence or absence of disability being drawn from the fact that you have previously been determined to be disabled." Id. § 404.1594(b)(6).

**B. Standard of Review**

The Court may affirm, modify, reverse, or remand the decision of the Commissioner based on the pleadings and transcript. 42 U.S.C. § 405(g). The Court's role is limited to deciding whether the ALJ's decision is supported by substantial evidence in the record and based on a correct legal standard. See id.; Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001); Manso-Pizarro v. Sec'y of Health and Human Servs., 76 F.3d 15, 16 (1st Cir. 1996); Irlanda Ortiz v. Sec'y of Health and

Human Servs., 955 F.2d 765, 769 (1st Cir. 1991). The Commissioner's findings of fact are conclusive when supported by substantial evidence but not when obtained by ignoring evidence, misapplying the law, or judging matters entrusted to experts. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999). "Substantial evidence" is more than a "mere scintilla." Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018). It is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Id. Under the substantial evidence standard, "a court looks to an existing administrative record and asks whether it contains 'sufficient evidence' to support the agency's factual determinations" and "the threshold for such evidentiary sufficiency is not high." Biestek v. Berryhill, 587 U.S. 97, 103-04 (2019).

A determination of substantiality must be based on the record. Irlanda Ortiz, 955 F.2d at 769. It is the Commissioner's responsibility to weigh credibility and to draw inferences from the evidence. Rodríguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981). Courts will not second guess the Commissioner's resolution of conflicting evidence. Irlanda Ortiz, 955 F.2d at 769. The Commissioner's findings must be upheld if a reasonable mind, viewing the evidence in the record, could accept them as adequate to support his conclusion. Rodríguez, 647 F.2d at 222. And even if there is substantial evidence, which could arguably justify a different conclusion, the Court must uphold the ALJ's decision if supported by substantial evidence. 20 C.F.R. §404.1546(c); Rodríguez Pagán v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir.1987).

## III. Discussion

### A. The ALJ's Decision

As a threshold matter, the ALJ found that Plaintiff had not attained age twenty-two (22) as of March 30, 2003, the alleged onset date of disability. Tr. 29. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 30, 2003, the alleged onset of disability. Id. At step two, the ALJ determined that Plaintiff had severe impairments pursuant to 20 C.F.R. §404.1520(c): History of motor vehicular accident in March 2003 resulting in multiple maxillofacial fractures, traumatic right leg ischemia s/p below knee amputation in March 2003, history of stump infection, cognitive changes due to traumatic brain injury (TBI), intracranial injury excluding skull fracture, right knee stump infection in November 2003, and movement disorder (right hand tremors). Id. The ALJ further classified Plaintiff's mathematics disorder, attention deficit disorder and non-dependent abuse of drugs as non-severe impairments. Tr. 30.

At the third step of the sequential analysis, the ALJ concluded that, from March 30, 2003, through March 30, 2005, the severity of Plaintiff's traumatic right leg ischemia s/p below knee amputation in March 2003, history of stump infection, and right knee stump infection in November 2003, met the criteria of section 1.20(D) of 20 CFR Part 404, Subpart P, Appendix 1. Tr. 30. The ALJ explained that Plaintiff met the criteria for section 1.20(D) because the record showed amputation of his right lower extremity with complications of the residual limb that lasted for a continuous period of at least 12 months, and the medical documentation revealed the inability to use a prosthesis and the need for a walker. Tr. 31.

After finding that Plaintiff was disabled, the ALJ evaluated whether Plaintiff's disability continued through the date of the decision under the eight-step sequential process set forth in 20 C.F.R. § 404.1594(f). At step one, the ALJ found that Plaintiff had not developed any new impairment since March 31, 2005, and therefore considered Plaintiff's current severe impairments to be the same that had been present from March 30, 2003, through March 30, 2005. Tr. 32. At step two, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 32-36. At step three, the ALJ found that medical improvement had occurred as of March 31, 2005. Tr. 36. At step four, the ALJ determined that the medical improvement was related to Plaintiff's ability to work. Tr. 37. The ALJ therefore proceeded to assess Plaintiff's RFC and concluded that Plaintiff could perform light work, as defined in 20 C.F.R. 404.1567(b), except:

> he uses a right prosthetic leg for walking. The claimant can stand and walk 4 hours in an 8-hour day. He can frequently handle and finger with both upper extremities. The claimant can never operate foot controls with right lower extremity. He can climb ramps and stairs occasionally, never climb ladders, ropes, or scaffolds, balance frequently, stoop occasionally, kneel occasionally, crouch occasionally, and crawl occasionally. The claimant can work around moving mechanical parts occasionally and operate a motor vehicle occasionally. He can perform jobs that do not require handwriting. He is able to perform simple, routine tasks. Use of judgment and dealing with changes in work setting are limited to simple work-related decisions.

Tr. 37. The ALJ then concluded that Plaintiff could successfully adjust to work that existed in the national economy, such as a price marker, garment sorter and laundry sorter. Tr. 42. The ALJ found that Plaintiff's disability ended on March 31, 2025, and that Plaintiff had not become disabled again since that date. Tr. 42.

**B. Plaintiff's Allegations of Error**

Plaintiff's appeal pertains exclusively to the ALJ's finding that Plaintiff's disability ended on March 31, 2005. Plaintiff therefore seeks partial reversal of the Commissioner's decision on the following grounds: (1) Plaintiff's impairments continued to meet Listing 1.20(D) after March 30, 2005; (2) the RFC determination is not supported by substantial evidence because the record does not show medical improvement; and (3) the ALJ failed to properly evaluate Plaintiff's subjective complaints. Docket No. 14.

**1. Listing 1.20(D)**

Plaintiff argues that the ALJ erred in finding that Plaintiff's physical impairments did not meet the criteria of Listing 1.20(D) for a traumatic right leg ischemia status post below knee amputation after March 30, 2005. To be sure, the ALJ did consider Plaintiff's impairment under Listing 1.20(D), but concluded that Plaintiff failed to meet the listing's requirements. Tr. 33. Listing 1.20(D) requires:

> Amputation of one or both lower extremities, occurring at or above the ankle (talocrural joint) with complications of the residual limb(s) that have lasted, or are expected to last for a continuous period of at least 12 months, *and* medical documentation of 1 and 2:
>
> 1. The inability to use a prosthesis(es); and
> 2. A documented medical need [] for a walker, bilateral canes, or bilateral crutches [] or a wheeled and seated mobility device involving the use of both hands.

20 C.F.R. Pt. 404, Subpt. P., App'x 1, § 1.20(D) (emphasis in the original).

The Listings explain the evidence necessary to establish an "inability to use a prosthesis(es)" under § 1.20(D). Specifically, "[i]f you cannot use your prosthesis(es) due to complications affecting your residual limb(s), we need evidence from a medical source documenting the condition of your residual limb(s) and the medical basis for your inability to use the device(s). Id. § 1.00(C)(6)(b). The Listings likewise define "documented medical need" for purposes of § 1.20(D)(2). The term "documented medical need" requires "evidence from a medical source that supports your medical need for an assistive device [] for a continuous period of at least 12 months." Id. § 1.00(C)(6)(a). "This evidence must describe any limitation(s) in your upper or lower extremity functioning and the circumstances for which you need to use the assistive device." Id. § 1.00(C)(6)(a).

The ALJ found that, after March 30, 2025, the record contained no medical documentation establishing either Plaintiff's inability to use a prosthesis or a documented medical need for a walker, bilateral canes, or bilateral crutches or a wheeled and seated mobility device involving the use of both hands. Tr. 33. The record supports that finding. Plaintiff relies primarily on evidence concerning complications involving his residual limb, including cellulitis of the stump that required vacuum-assisted closure therapy. Plaintiff contends that these complications prevented him from using his prosthesis. The medical records do establish that, during treatment at HealthSouth, Plaintiff was unable to use his prosthesis and required a wheelchair and walker. The records further indicate that Plaintiff subsequently remained unable to use the prosthesis and developed another infection of the right residual limb. Plaintiff's mother also testified that attempts to use the prosthesis resulted in pain, discomfort, and redness. This evidence, however, does not establish that Plaintiff satisfied Listing 1.20(D) after March 30, 2005. The complications described by Plaintiff and his mother occurred between March 30, 2003, and March 30, 2005. Indeed, these are the same medical records the ALJ relied upon in determining that Plaintiff met the Listing before March 31, 2005, the date on which the ALJ determined that Plaintiff's disability ended. Tr. 31. Thus, the evidence establishes complications associated with Plaintiff's residual limb and inability to use the prosthesis during the earlier period, but it does not establish the same limitations during the period at issue.

Plaintiff's points to additional medical records dated after March 30, 2005, including records from the Automobiles Accidents Compensation Administration. However, those records do not establish an ongoing inability to use the prosthesis. Instead, the records indicate that Plaintiff reported overall proper healing of lower right stump and some adjustments of prosthesis. Tr. 957, 959, 963, 991. While these records demonstrate some difficulties with his prosthesis, they do not establish that Plaintiff was medically unable to use it or that he had a documented medical need for a qualifying assistive device for a continuous period of at least 12 months. The records also indicate that Plaintiff had been treated for stump infection with antibiotics by Dr. Felix Figueroa for approximately 12 days without improvement between 2014 and 2016 and was subsequently hospitalized on October 8, 2019. Tr. 1029. 1030, 1035, 1037, 1039, 1049, 1053, 1055. At the time of admission, Plaintiff was ambulating with crutches. Tr. 1028. He was diagnosed with an acute cutaneous abscess of the right lower extremity and was discharged on October 15, 2019, following drainage of an infected right-knee hematoma with associated cellulitis. Even assuming that

Plaintiff's use of crutches during this hospitalization demonstrates a temporary need for an assistive device, the record does not establish that such need continued for at least 12 months, as required by Listing 1.20(D)(2) and § 1.00(C)(6)(a). Therefore, Plaintiff identifies no medical evidence to demonstrate a continuous 12-month period of medical need for crutches or another qualifying assistive device.

Plaintiff further cites records from Puerto Rico Prosthetics documenting subsequent adjustments, inspections, and alignments of his prosthesis. Although these records demonstrate that Plaintiff experienced various difficulties with his prosthesis, they do not establish that he was medically unable to use it or that he had a documented medical need for a qualifying assistive device for a continuous period of at least 12 months. For example, a January 20, 2022, treatment note states that Plaintiff reported no pain or discomfort while walking and was not using an assistive device. Tr. 1095. Likewise, the prosthetic records through June 11, 2022, document continued follow-up, inspection, alignment, and adjustment of the prosthesis, but do not establish a continuous 12-month period of inability to use the prosthesis together with a documented medical need for a qualifying assistive device. Tr. 1098-1113.

Accordingly, although the record undoubtedly demonstrates that Plaintiff experienced complications with his residual limb and intermittent difficulties using his prosthesis, the evidence after March 30, 2005, does not establish all the requirements of Listing 1.20(D). Plaintiff has not identified medical documentation establishing both an inability to use the prosthesis and a documented medical need for a qualifying assistive device for a continuous period of at least 12 months. The evidence Plaintiff relies upon either predates March 31, 2005, or only documents temporary or intermittent use of an assistive device. The Court therefore finds no error in the ALJ's evaluation of Listing 1.20(D).

**2. Analysis of the ALJ's Medical-Improvement and RFC Findings**

Plaintiff argues that the RFC is erroneous because the record does not establish medical improvement. The Commissioner responds that the ALJ reasonably relied on the unrebutted testimony of medical expert Dr. Bonilla, who opined that, approximately two years after the amputation, Plaintiff had regained the ability to perform a reduced range of light work with his right-leg prosthesis.

Medical improvement and RFC determinations depend on different factors. To assess medical improvement, the ALJ must determine whether there has been a decrease in the medical

severity of the impairment, as shown by changes in the claimant's symptoms, signs, or laboratory findings. 20 C.F.R. § 404.1594(b)(1), (b)(7). An RFC, by contrast, concerns what the claimant can still do despite his impairments and resulting limitations, based on all relevant evidence. Id. § 404.1594(a)(1). Under the sequential evaluation for cessation of disability, the RFC inquiry becomes relevant after the ALJ determines that medical improvement has occurred and considers whether that improvement is related to the claimant's ability to work. Id. § 404.1594(f)(3)-(4), (7)-(8).

Accordingly, the Court construes Plaintiff's argument as presenting two related but distinct questions: (1) whether substantial evidence supports the ALJ's finding that Plaintiff experienced medical improvement as of March 31, 2005; and (2) whether substantial evidence supports the RFC assessed for the period following that date. Plaintiff does not have to disprove medical improvement. But it is insufficient for Plaintiff to identify evidence that could support a different finding. The question is whether the ALJ's findings are supported by evidence that a reasonable mind could accept as adequate. Biestek, 587 U.S. at 103; Rodríguez Pagán, 819 F.2d at 3.

**a. Medical Improvement**

The ALJ's finding of medical improvement is supported by the examinations of treating physician Dr. Ramos on August 21, 2005, and August 16, 2006. Tr. 36. Those examinations documented that Plaintiff was doing well, identified no major concerns, and found that his gait was symmetric and his balance was adequate. Tr. 2492, 2495. These findings constitute objective evidence of a decrease in the medical severity of Plaintiff's impairment following the initial period of disability.

Plaintiff's contrary evidence does not undermine that finding. Much of the evidence on which Plaintiff relies concerns the severity of his original injuries. That evidence is undisputed and was the basis for the ALJ's original finding of disability. But evidence establishing the severity of the impairment before the relevant period does not establish that the impairment remained at the same level of severity thereafter. Nor does medical improvement require that the impairment resolve completely or that all related complications cease. The relevant inquiry is whether the impairment has decreased in medical severity. 20 C.F.R. § 404.1594(b)(1). The records documenting ongoing prosthetic adjustments, replacement sockets and liners, and intermittent infections requiring treatment describe continuing challenges associated with Plaintiff's use of a

prosthesis. Those records are not necessarily inconsistent with the ALJ's finding that Plaintiff's medical condition improved after March 2005.

Similarly, the ALJ could reasonably view the infections documented in 2014 through 2016 and the 2019 hospitalization as intermittent episodes rather than evidence that Plaintiff's condition had returned to the level of severity that existed before the identified medical improvement. The Court does not minimize that evidence, and another factfinder might have weighed it differently. But Plaintiff's repeated assertion that the record "clearly establishes" continuing disability asks the Court to reweigh the evidence, which it may not do at this juncture. Purdy, 887 F.3d at 13; Rodríguez Pagán, 819 F.2d at 3. There is substantial evidence in the record for the ALJ's finding that Plaintiff experienced medical improvement as of March 31, 2005.

**b. RFC**

The remaining question is whether substantial evidence supports the RFC assessed for the period following Plaintiff's improvement. The central dispute concerns Plaintiff's exertional capacity. The ALJ found that Plaintiff could lift, carry, push, and pull twenty pounds occasionally and ten pounds frequently (the exertional requirements of light work, 20 C.F.R. § 404.1567(b)) and could stand and walk for four hours in an eight-hour workday. Tr. 37. Those findings mirror Dr. Bonilla's opinion that Plaintiff can sit and stand for four hours and can lift, carry, push, and pull twenty pounds occasionally and ten pounds frequently. Tr. 61. Contrastingly, Dr. Albizu opined that Plaintiff cannot lift or carry more than ten pounds and is unable to walk without a prosthesis. Tr. 2689. The difference matters: a ten-pound lifting limitation corresponds to sedentary work, not light work. 20 C.F.R. § 404.1567(a).

Resolving the conflict between those two opinions was the ALJ's responsibility. Irlanda Ortiz, 955 F.2d at 769; Rodríguez, 647 F.2d at 222. The fact that Dr. Albizu examined Plaintiff while Dr. Bonilla did not, does not, by itself, require the ALJ to credit Dr. Albizu's opinion. Under the governing regulations, the ALJ does not defer or give any specific weight to a treating or examining source. 20 C.F.R. § 404.1520c(a). Although a non-examining opinion that conflicts with the findings of an examining physician may warrant less weight, Rose v. Shalala, 34 F.3d 13, 18 (1st Cir. 1994), the significance of such an opinion depends on the circumstances, Berríos López v. Sec'y of Health & Hum. Servs., 951 F.2d 427, 431 (1st Cir. 1991). Dr. Bonilla reviewed the entire longitudinal record, including treatment history predating Dr. Albizu's involvement, testified at the hearing subject to questioning, and supported his conclusion with reference to the

medical findings. Tr. 61-62. Under these circumstances, Dr. Bonilla's opinion constitutes evidence that a reasonable mind could accept as adequate to support the exertional components of the RFC. Berríos López, 951 F.2d at 431 ("In a related context we have held that the testimony of a non-examining medical advisor—to be distinguished from the non-testimonial written reports in the instant case—can alone constitute substantial evidence, depending on the circumstances) (string citations omitted); Torres v. Secretary of Health and Human Services, 870 F.2d 742, 744 (1st Cir. 1989) ("[W]hether the testimony of a medical advisor who reviews the record and testifies at the hearing can itself alone constitute substantial evidence varies with the circumstances, including the nature of the illness and the information provided to the advisor."); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) ("opinions of non-treating or non-examining physicians may [ ] serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record."). Moreover, the ALJ considered Dr. Albizu's observations of an altered gait pattern in formulating the RFC. Tr. 40.

Nor are Dr. Bonilla's and Dr. Albizu's opinions necessarily inconsistent in every respect. Dr. Albizu's statement that Plaintiff had difficulty walking does not, without more, establish a specific vocational limitation because Dr. Albizu did not quantify the amount of time Plaintiff could stand or walk. That observation is not inconsistent with an RFC limiting Plaintiff to four hours of standing and walking—substantially less than the approximately six hours generally required for the full range of light work. See SSR 83-10, 1983 WL 31251, at *6. Nor does it necessarily conflict with the ALJ's additional restrictions prohibiting use of right-sided foot controls, climbing ladders, ropes, scaffolds, and limiting climbing ramps or stairs occasionally.

The material conflict between the opinions of the two doctors relates to Plaintiff's ability to lift, carry, push, and pull. The ALJ relied on Dr. Bonilla's opinion on that issue. For the reasons discussed above, that opinion constitutes evidence a reasonable mind could accept as adequate to support the ALJ's finding. It is also consistent with the treatment records cited by the ALJ documenting that Plaintiff had mastered the use of his prosthesis and was doing well. Tr. 38. Dr. Albizu's opinion therefore provided the only identified medical basis limiting Plaintiff to ten pounds, and the ALJ was entitled to resolve that conflict by relying on Dr. Bonilla's contrary opinion.

The more restrictive limitations Plaintiff proposes—standing and walking for less than thirty minutes, sitting for less than one hour, and requiring frequent fifteen-minute breaks to

remove his prosthesis—are not supported by any medical opinion identified in the record. Dr. Albizu did not assess those specific sitting, standing, or walking restrictions. These appear to derive primarily from Plaintiff's testimony. Although the ALJ was required to consider Plaintiff's subjective complaints, the ALJ was not required to adopt functional limitations that were not supported by the medical evidence. Thus, the ALJ did not err merely by declining to adopt functional limitations that no medical source addressed.

The manipulative limitations, however, present a materially different issue. The ALJ found that Plaintiff can frequently handle and finger with both upper extremities. Tr. 37. "Frequently" means activity occurring from one-third to two-thirds of the workday. SSR 83-10, 1983 WL 31251, at *6. In reaching that conclusion, the ALJ discussed Dr. Pérez's neuropsychological examination, during which Dr. Pérez observed involuntary movement in Plaintiff's right hand that Plaintiff controlled with his left hand and noted that writing was slow and tiring for him. Tr. 38, 2465. The ALJ accounted for those observations by limiting Plaintiff to frequent, rather than constant, handling and fingering and by excluding jobs that require handwriting. Tr. 37. However, the ALJ declined to impose a limitation to occasional handling and fingering, relying on Dr. Ramos' treatment note, which the ALJ characterized as documenting "adequate examination of extremities and trunk." Tr. 39. The ALJ also rejected Dr. Albizu's opinion that Plaintiff cannot handle objects. Tr. 40, 2689.

The problem is that the record, as described by the ALJ, does not contain substantial evidence for the specific finding that Plaintiff could perform handling and fingering activities frequently. First, the treatment note on which the ALJ relied does not contain the finding attributed to it. Rather, the cited portion addresses Plaintiff's orientation, memory, aggressiveness, level of attention, communication, and head and neck. Tr. 948. It does not document an examination of Plaintiff's extremities and trunk as described by the ALJ. Id. Nor does it address tremors, fine-motor control, or coordination. Id. Second, and more importantly, no other medical source identified in the record opined that Plaintiff could frequently handle and finger objects. Dr. Albizu was the only medical source who spoke of Plaintiff's manipulative abilities, and he opined that Plaintiff could not handle objects. Tr. 40, 2689. Dr. Bonilla did not assess manipulative functioning. Tr. 41, 61-62. Dr. Pérez recorded clinical observations but did not translate those observations into a functional assessment of Plaintiff's ability to handle and finger objects. Tr. 2465.

This distinction is significant. The RFC is an administrative finding reserved to the ALJ. 20 C.F.R. § 404.1546(c). An ALJ is not required to adopt a medical opinion wholesale, and the absence of a medical opinion adopting a particular RFC formulation may not, in and of itself, invalidate the RFC. But an ALJ, as a lay decision maker, may not interpret raw medical data and independently convert clinical findings into specific functional limitations. Berríos v. Sec'y of Health & Human Servs., 796 F.2d 574, 576 (1st Cir. 1986); Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 17 (1st Cir. 1996). The ALJ can make a common-sense judgment concerning functional capacity where the medical evidence demonstrates relatively mild impairment, but the ALJ may not "overstep the bounds of a lay person's competence and render a medical judgment." Gordils v. Sec'y of Health & Hum. Servs., 921 F.2d 327, 329 (1st Cir. 1990). This same distinction has been discussed in circumstances like those presented here. In Sherry B. v. Saul, the court rejected an RFC finding where no medical professional had opined that the claimant was capable of the specific handling and fingering limitations assessed by the ALJ. 518 F. Supp. 3d 590, 592 (D.R.I. 2021). The court explained that an ALJ is not qualified to interpret raw medical data in functional terms without the assistance of a medical expert. Id. ("The ALJ was faced with a medical opinion in the record from a neurosurgeon that Sherry's fingering/handling could be occasionally done and an inconsistent opinion from an endocrinologist that says no manipulative limitation but finds upper extremities limitations and severe right-hand impairment. Based on these conflicting and inconsistent opinions, the ALJ then seemingly decided to split the baby and find that Sherry could finger/handle objects 'frequently' []. The ALJ cannot render such a medical opinion in the face of conflicting and inconsistent evidence without the assistance of a medical expert."); see also Manso-Pizarro, 76 F.3d at 17; Pérez v. Sec'y of Health & Human Servs., 958 F.2d 445, 446 (1st Cir. 1991); Gordils, 921 F.2d at 329.

The evidence here does not demonstrate a relatively mild impairment with functional consequences that would be apparent to a layperson. Dr. Pérez diagnosed a movement disorder secondary to traumatic brain injury and observed involuntary movement in Plaintiff's dominant hand. Dr. Albizu's neurological examination revealed found motor and sensory deficits in both upper extremities, loss of fine motor skills, unintentional tremors, and poor coordination, and attributed Plaintiff's ataxia to permanent cerebellar damage. Plaintiff also testified that his right-hand tremors interfered with activities such as buttoning his shirt, tying his shoes and eating

without spilling or staining his clothes. Tr. 90-91. His mother provided testimony concerning his functional difficulties as well. Tr. 94-95. Against this evidence, determining whether Plaintiff could nevertheless handle and finger objects for two-thirds of the workday was not a matter of common-sense judgment. It requires translating neurological findings concerning tremors, coordination, motor function, and fine-motor skills into a specific manipulative limitation. No medical source performed that translation. On the contrary, the only identified medical opinion addressing Plaintiff's manipulative ability, Dr. Albizu's, was more restrictive.

The ALJ failed to adequately explain the rejection of Dr. Albizu's manipulative opinion. Under 20 C.F.R. § 404.1520c(b)(2), the ALJ must explain how the factors of supportability and consistency were considered in evaluating medical opinions. Dr. Albizu's opinion on Plaintiff's hand function was supported by his neurological findings and was consistent with Dr. Pérez's observations of involuntary movement and impaired writing, as well as Plaintiff's and his mother's testimony on his functional difficulties. The ALJ's stated reason for discounting that opinion—Dr. Ramos' purported finding of an "adequate examination of extremities and trunk"—does not accurately describe the cited treatment note. And, in any event, the note does not address the specific neurological abnormalities identified by Dr. Albizu, including tremors, fine-motor impairment, or coordination. The ALJ therefore did not identify substantial evidence that explained why Dr. Albizu's specific manipulative findings were unsupported or inconsistent with the record. Santiago v. Sec. of Health & Human Servs., 944 F.2d 1, 7 (1st Cir. 1991) ("[A]n expert's RFC evaluation is ordinarily essential unless the extent of functional loss, and its effect on job performance, would be apparent even to a lay person.").

The Commissioner's argument does not cure this deficiency. The Commissioner characterizes the RFC as limiting Plaintiff to occasional handling and fingering (Docket No. 16 at p. 6), but the RFC expressly found that Plaintiff could handle and finger frequently (Tr. 37). That distinction is vital. The VE testified that a hypothetical individual capable of frequent handling and fingering could perform the occupations of price marker, garment sorter, and laundry sorter, but expressly testified that "there wouldn't be any work" for an individual limited to occasional handling and fingering. Tr. 73-74. Thus, the handling-and-fingering limitation has a direct bearing on the occupational base and on whether there are jobs that Plaintiff can perform. Because the VE's testimony establishes a different vocational consequence depending on whether handling and fingering may be done frequently or occasionally, the error is not harmless. Given the documented

neurological abnormalities, the absence of a medical opinion supporting the specific limitation assessed, the inaccurate characterization of the treatment note on which the ALJ relied, and the vocational significance of the distinction between frequent and occasional handling and fingering, the finding that Plaintiff could frequently handle and finger is not supported by substantial evidence and should be revisited.

**3. Evaluation of Plaintiff's Subjective Complaints**

Plaintiff argues that the ALJ failed to properly evaluate his subjective symptoms and did not adequately address the Avery factors. See Avery v. Secretary of Health & Human Services, 797 F.2d 19 (1st Cir. 1986); SSR 16-3p. The Commissioner contends that the ALJ properly evaluated Plaintiff's subjective complaints against the record as a whole.

Under the SSR 16-3p, the ALJ must evaluate the intensity, persistence, and limiting effects of subjective symptoms to determine their impact on the claimant's ability to work. 20 C.F.R. § 416.929(c)(4); SSR 16-3p, 2017 WL 5180304, at *7. But the ALJ may discount subjective complaints if they are inconsistent with the objective medical evidence and other evidence in the record. Romero Hernández v. Comm'r of Soc. Sec., 2020 WL 5036172, at *7 (D.P.R. Aug. 26, 2020). The ALJ's credibility determination is entitled to deference, especially when supported by specific findings. Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987). Because symptoms may be more severe than can be shown by objective medical evidence alone, the regulations require consideration of six factors, commonly referred to as the "Avery factors:" (1) the nature, location, onset, duration, frequency, radiation, and intensity of the pain; (2) factors that precipitate or aggravate the pain, including movement, activity, or environmental conditions; (3) the type, dosage, effectiveness, and side effects of pain medication; (4) treatments other than medication to alleviate pain; (5) functional restrictions; and (6) the claimant's daily activities. Id. § 404.1529(c)(3); Avery, 797 F.2d at 28 (1st Cir. 1986). An ALJ need not recite each Avery factor mechanically. The law requires that the ALJ make specific findings, tied to the record, explaining why a claimant's allegations were or were not credited. Da Rosa v. Secretary of Health & Human Services, 803 F.2d 24, 26 (1st Cir. 1986); Frustalgia, 829 F.2d at 195.

Plaintiff does not identify a particular Avery factor that the ALJ failed to consider, nor does he explain how consideration of that factor would have materially altered the RFC. Moreover, the ALJ did not reject Plaintiff's testimony concerning his lower-extremity symptoms and pain wholesale. Rather, the ALJ credited those allegations to some extent by limiting Plaintiff to four

hours of standing and walking, prohibiting the use of right-sided foot controls and climbing ladders, ropes, and scaffolds, and imposing additional postural restrictions. Tr. 37. However, the ALJ declined to credit Plaintiff's testimony that he could not use his prosthesis for more than an hour or perform even sedentary work, finding it inconsistent with treatment records reporting that he had mastered the prosthesis and was doing well and with Dr. Bonilla's opinion. Tr. 38, 41. That constitutes a specific reason, grounded in identified evidence, for discounting the alleged severity of those limitations.

Plaintiff points to evidence of recurrent prosthetic-fitting problems and residual-limb infections that could support a more restrictive assessment. But the existence of evidence that could support a different interpretation does not establish reversible error where the ALJ reasonably resolved the evidentiary conflict. Irlanda Ortiz, 955 F.2d at 769. The Court therefore finds no reversible error in the ALJ's treatment of Plaintiff's testimony concerning his lower-extremity symptoms and prosthesis.

The same is true of the testimony regarding Plaintiff's cognitive limitations. The ALJ found those allegations inconsistent with psychological evaluations reflecting below-average intelligence but intact memory, concentration, verbal expression, thought processes, and ability to interact with others, and with the state agency psychologists' assessments that Plaintiff could perform at least simple tasks. Tr. 39, 41. The ALJ accounted for the limitations she did find by restricting Plaintiff to simple, routine tasks and simple work-related decisions. Tr. 37. Plaintiff does not specifically challenge the evidentiary basis for that portion of the ALJ's symptom analysis, and the identified evidence provides substantial support for the limitations assessed.

The tremors testimony stands on a different footing. Plaintiff testified that he has difficulties dressing and feeding himself, and his mother testified that Plaintiff has difficulties with daily activities due to his tremors. Tr. 90-91, 94-95. The ALJ partially credited those allegations, relying on Dr. Pérez's observations to exclude jobs that require handwriting. Tr. 38. The only reason identified by the ALJ for not fully crediting Plaintiff's testimony was Dr. Ramos' purported notation of an "adequate examination of the extremities and trunk." Tr. 39. As explained above, Dr. Ramos' note does not contain that finding and does not address tremors, fine-motor control, or coordination. Moreover, Plaintiff's testimony is consistent with Dr. Pérez's observations of involuntary movement in his dominant hand and Dr. Albizu's findings of tremors, impaired coordination, and loss of fine-motor skills. Thus, the ALJ did not adequately explain why

Plaintiff's testimony concerning the functional effects of his tremors was inconsistent with the record. See SSR 16-3p, 2017 WL 5180304, at *10 (requiring an explanation sufficient to permit subsequent review of the symptom evaluation). This deficiency bears directly on the RFC's manipulative limitations. As discussed above, the ALJ found that Plaintiff could frequently handle and finger despite the absence of a medical opinion supporting that specific limitation. On remand, the ALJ should reevaluate Plaintiff's testimony concerning his tremors together with the medical evidence and the manipulative component of the RFC.

## IV. Conclusion

For the reasons stated above, the Commissioner's decision is **REVERSED in part**, and the case is **REMANDED** for further administrative action consistent with this opinion.

Judgment is to be entered accordingly.

**IT IS SO ORDERED.**
In San Juan, Puerto Rico, this 25th day of September 2026.

s/Giselle López-Soler
GISELLE LÓPEZ-SOLER
United States Magistrate Judge